IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE SCHOLL AND FRANK BEDNARZ, <br><br> Plaintiffs, <br><br> v. <br><br> ILLINOIS STATE POLICE; BRENDAN F. KELLY, *in his official capacity as Director of the Illinois State Police*; JAY ROBERT PRITZKER, *In his official capacity as Governor of the State of Illinois*; KWAME RAOUL, *in his official capacity as Attorney General of Illinois*, <br><br> Defendants. | Case No. 24-4435 <br><br><br><br><br><br> **Complaint** |

## Introduction

1.      Defendants, Illinois State Police and officials responsible for that Agency, are operating a system of dragnet surveillance, recording the whereabouts of every resident of Cook County who drives a car or truck—and are expanding this mass surveillance across the entire state.

2.      Defendants are tracking anyone who drives to work in Cook County—or to school, or a grocery store, or a doctor's office, or a pharmacy, or a political rally, or a romantic encounter, or family gathering—every day, without any reason to suspect anyone of anything, and are holding onto those whereabouts just in case they decide in the future that some citizen might be an appropriate target of law enforcement.

3. They do this via a system of Automated License Plate Readers ("ALPRs"), of which Defendants have installed hundreds and plan on installing many hundreds more.

4. Plaintiffs, Cook County residents and drivers, challenge the warrantless, suspicionless, and entirely unreasonable tracking of their movements as an unreasonable search in violation of the Fourth and Fourteenth Amendments.

## Parties

5. Plaintiff Stephanie Scholl is a resident of Cook County, Illinois. She holds a valid Illinois Driver's License. She regularly drives on the expressways in Cook County and the surrounding area, almost always using the same personal vehicle, including commuting from her home in Cook County to work in the Chicago suburbs, as well as regular other trips by car in areas covered by Illinois' ALPR system.

6. Plaintiff M. Frank Bednarz is also a resident of Cook County, Illinois. He holds a valid Illinois Driver's License. He regularly drives on the expressways in Cook County and the surrounding area, almost always using the same personal vehicle, as well as regular other trips by car in areas covered by Illinois' ALPR system.

7. Defendant Illinois State Police is the state police agency for the State of Illinois.

8. Defendant Brenden F. Kelly is the Director of the Illinois State Police.

9. Defendant Jay Robert Pritzker is the Governor of the State of Illinois and is responsible for enacting and implementing the surveillance policy challenged in this case.

10. Defendant Kwame Raoul is the Attorney General of the State of Illinois and is responsible for enforcing and defending the laws of the state of Illinois.

11. All Defendants are sued in their official capacities.

## Jurisdiction and Venue

12. This case raises claims under the Fourth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

13. Venue is proper because a substantial portion of the events giving rise to the claims occurred in the Northern District of Illinois. 28 U.S.C. § 1391(b)(2).

## Facts

14. After the 2019 shooting of a postal worker on an I-57 expressway, Illinois passed the Tamera Clayton Expressway Camera Act ("the Act"), 605 ILCS 140/1 *et seq.*, which funds and requires the installation of ALPRs on Chicago's expressways.

15. The Act funded the installation of some 300 ALPR cameras across every expressway in Cook County—I-90 (Kennedy and Jane Addams tollway), I-290 (Eisenhower), I-55 (Stevenson), I-90/94 (Dan Ryan), I-94 (Bishop Ford), and I-57.[1]

16. The technology does what the name implies: cameras set up by the side of the road record the license plates of cars driving by, and then feed that information

---

[1] Illinois State Police, "Automated License Plate Reader - Transparency Page," https://isp.illinois.gov/CriminalInvestigations/TransparencyPage

into a national database. When a crime is committed, police can look to see what cars passed by that area at the relevant time and to whom those vehicles are registered.

17.     The ALPR data has both prospective and retrospective application.

18.     Prospectively, ALPRs are used to run the plates of every citizen driving past against lists of "hot" plates to track down those law enforcement has come to suspect.

19.     Retrospectively, where law enforcement chooses to investigate a citizen's past movements, the ALPRs feed databases creating a comprehensive map of their travels, recording every time they've driven past ISP's cameras—and indeed every time they've driven past cameras in other jurisdictions using the same databases.

20.     Under the Act, the images and data collected by "the cameras may be extracted by any authorized user and used by any municipal police department, county sheriff's office, State Police officer, or other law enforcement agency with jurisdiction in the investigation of any offenses involving vehicular hijacking, aggravated vehicular hijacking, terrorism, motor vehicle theft, or any forcible felony, including, but not limited to, offenses involving the use of a firearm; to detect expressway hazards and highway conditions; and to facilitate highway safety and incident management." 605 ILCS 140/5.

21.     As ISP explains, "an ALPR is designed to capture an image of a vehicle's license plate. The software then compares the license plate number against law enforcement databases such as the National Crime Information Center (NCIC), the

Law Enforcement Agency Data System (LEADS), the Department of Homeland Security, and the Illinois Secretary of State (SOS), and National Amber Alert."[2]

22.     In June 2022, the Governor signed an expansion, "Tamara Clayton 2.0," which extends the program beyond Cook County to 20 additional counties[3], as well as Chicago's Lake Shore Drive. Funding for this expansion comes from a $22.5 million dollar grant to ISP through the Illinois Department of Transportation (IDOT), which coordinates with ISP on the ALPR program.[4]

23.     ISP has also separately partnered with the Illinois Tollway Authority to install ALPRs at tollway locations including Cook, Kane, Lake, Will, DuPage, Dekalb, and Lee Counties, with funding distinct from the IDOT grants.[5]

24.     ISP maintains this Illinois State Police Automated License Plater Reader Statistics Dashboard, which publishes data on the program for public consumption.[6]

25.     According to the Dashboard, as of May 2024 ISP has purchased 649 cameras through the IDOT grant as well as 18 tollway cameras, and there are 334 IDOT Cameras installed in Cook County, 71 in St. Clair County, 8 in Morgan County, and 4 in Champaign County, along with 6 tollway cameras in Cook County and 4 in Winnebago County.[7]

---

[2] *Id.*

[3] The additional counties are Boone, Bureau, Champaign, DeKalb, DuPage, Grundy, Henry, Kane, Kendall, Lake, LaSalle, Macon, Madison, McHenry, Morgan, Peoria, Rock Island, Sangamon, St. Clair, Will and Winnebago.

[4] ISP Transparency Page.

[5] *Id.*

[6] https://isp.maps.arcgis.com/apps/dashboards/77d1b36b7d9f419289cffe58d8ac9e54

[7] *Id.*

26.     The Dashboard also provides activity statistics for the previous month. As of May 2024, it lists 4,668,716 "Hits" and 141,617,104 "Detections".[8]

27.     "Hits" are defined as "when a read license plate matched to a license entered into a Hot List or Hot Plate"; a "Hot Plate" is a license plate flagged by law enforcement for some reason: a stolen car, missing person, revoked or expired registration, or whatever other law enforcement interest in a vehicle.[9]

28.     "Detections" are "the capture of digital images or license plates and vehicles with associated metadata (date, time, GPS coordinates with vehicle image capture)."[10]

29.     The Act requires ISP to submit an Annual Report detailing program operations. The most recent covers July 2022 through June 2023.[11]

30.     The Annual Report list 1,548,456,793 Detections for that twelve-month period, 70,956,094 "Inquires where the Investigation involved Criminal Offenses (Hits related to a law enforcement database)," and 282,118 "LE Incidents searched within stored data (Inquiries made by Law Enforcement related to a hit captured within the database)."

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] https://isp.illinois.gov/StaticFiles/docs/DII/Final%20ALPR%20Annual%20Report.pdf

31.     The current vendor for ISP's ALPR cameras is Vetted Security Solutions,[12] which installs cameras that use Motorola's "Vigilant" system[13], feeding every detected license plate into Vigilant's Law Enforcement Archival Reporting Network ("LEARN") database.

32.     LEARN is a national database, with billions of license plate "Detections" from all around the country stored and retained for later used by law enforcement at their discretion. *See, e.g. United States v. Yang*, 958 F.3d 851, 863 (9th Cir. 2020) (Postal Inspectors in Nevada used LEARN to apprehend suspect). This means that the Detections captured by ISPs cameras are available to other Vigilant customers nationwide, and that ISP has access to Detections made by other jurisdiction's ALPRs around the country.

33.     According to ISP, Detections from the ISP cameras are stored in the LEARN database for 90 days.[14] This would mean that at any given time ISP retains approximately 350 to 450 million Detections, in addition to the Detections shared with LEARN by other Vigilant customers.

34.     The 90-day retention limit is not set by Vigilant; rather, each individual client of Vigilant decides which data to retain: "As the data is [our clients'] property, it is held according to the retention policy set forth by [them]. Retention policies

---

[12] Contract between Vetted Security Solutions and ISP, executed Janaury 9, 2023, https://isp.illinois.gov/StaticFiles/docs/CriminalInvestigations/ISP%20and%20Vetted%20Security%20Soluations%20contract.pdf
[13] https://www.motorolasolutions.com/en_us/video-security-access-control/license-plate-recognition-camera-systems/vigilant-vehiclemanager-lpr-analytics-software.html
[14] ISP Transparency Page.

may be adjusted by the Agency or Site Manager at any time, and different retention policies may be set for "detections" and "hits" to allow for consistency with any policy in place and/or legislation."[15] Defendants could therefore extend the retention of such data indefinitely at their discretion and have access to Detections from other jurisdictions that may have shorter or longer retention periods.

35.     According to Motorola, "data collected by Motorola's customers is the property of the respective customer . . . and Motorola has no rights or ownership to any of this data."[16]

36.     As a practical matter, the LEARN data is maintained on private Vigilant servers, with Motorola serving as custodian for its law enforcement clients, not on servers controlled by ISP or other law enforcement agencies.

37.     ISP's system of ALPRs subjects every citizen who relies on a car or truck for transportation, including Plaintiffs, to unwarranted, suspicionless dragnet surveillance.

38.     ISP records every time Plaintiffs drive a car around Cook County, and stores that information for future criminal investigations of them, without any probable cause or reasonable suspicion.

---

[15] Motorola, "MANAGING YOUR LPR DATA FAQ,"
https://www.motorolasolutions.com/content/dam/msi/docs/products/license-plate-recognition-systems/vigilant-vehiclemanager/lpr_data_management_faq_en_us.pdf
[16] *Id.*

39.     Indeed, ISP does not even have *unreasonable* suspicion: they have no suspicion at all. Rather, they collect all the public movements of every car they can in Illinois—and every car they can around the country.

40.     ISP is tracking the movements of millions of citizens, including Plaintiffs, and just holding onto that mass surveillance data in case one day some police officer decides to target Plaintiffs for specific investigation—warranted or unwarranted.

## COUNT I

### The tracking of Plaintiffs' movements constitutes a violation of their Fourth Amendment and Fourteenth Amendment rights against unreasonable searches

41.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

42.     The Fourth Amendment has been incorporated against the states via the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643 (1961).

43.     Defendants deprive Plaintiffs of their Fourth Amendment right against unreasonable searches by tracking their movements via continuous dragnet surveillance of any citizen who drives a car.

44.     In depriving Plaintiffs of their Fourth Amendment rights, Defendants, and their agents, are acting under color of state law.

45.     Plaintiffs have a reasonable expectation of privacy that society is prepared to recognize as legitimate in the aggregation location data over time. *Carpenter v. United States*, 138 S. Ct. 2206 (2018); *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J. concurring).

46. It is an unreasonable search when the government tracks the movements of every citizen who drives a car just in case it might someday have reasonable suspicion as to one of the millions of people being tracked.

47. Defendants do not have any substantial or exigent government interest that would justify searching every citizen who drives a car, every day, and retaining that record of every citizen's movements.

48. Defendants' policies are not narrowly tailored to the means least restrictive of Plaintiffs' privacy.

49. Plaintiffs are entitled to declaratory and injunctive relief against defendants for the violation of their Fourth Amendment right against search a seizure.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A. Enjoin the implementation of the operative version of the Tamera Clayton Expressway Camera Act, 605 ILCS 140/1 et seq.,

B. Enjoin Defendants from operating the existing system of ALPRs to track Plaintiffs.

C. Enjoin Defendants from installing additional ALPRs that would track Plaintiffs if they continues to drive cars in Illinois.

D. Award Plaintiffs their reasonable costs, expenses, and attorneys' fees pursuant to any applicable law; and

E. Award Plaintiffs any additional relief the Court deems just and proper.

Dated: May 30, 2024

Respectfully submitted,

Stephanie Scholl and Frank Bednarz

By: <u>Jeffrey Schwab</u>
One of their Attorneys

Jeffrey Schwab
Reilly Stephens*
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
(312) 637-2280
jschwab@ljc.org
rstephens@ljc.org
*Motion for Admission forthcoming