**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE SCHOLL and FRANK BEDNARZ, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 24-cv-4435 |
| v. | ) | |
| | ) | Honorable Martha M. Pacold |
| ILLINOIS STATE POLICE; BRENDAN F. KELLY, in his official capacity as Director of the Illinois State Police; JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois; KWAME RAOUL, in his official capacity as Attorney General of Illinois, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' COMBINED MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS AND IN OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

Introduction…………………………………………………………………………………1

Argument…………………………………………………………………………………….3

I.   Plaintiffs' Complaint should be dismissed. .................................................................. 4

   A.  Plaintiffs' claims against the Illinois State Police, Governor Pritzker and
       Attorney General Raoul are barred by the Eleventh Amendment. ....................................... 4

   B.  Plaintiffs lack standing to challenge the use of ALPRs. ......................................... 6

      1.  Plaintiffs' Complaint does not state an injury in fact. ................................. 7

      2.  Plaintiffs lack standing to seek a preliminary injunction on behalf of
          all people in Illinois. ................................................................. 12

   C.  Plaintiffs' claims under the Fourth Amendment fail because ISP's use of
       ALPRs does not constitute an unconstitutional search. ....................................... 13

      1.  Plaintiffs do not have a reasonable expectation of privacy in their
          license plate numbers or travel on public thoroughfares. ............................... 14

      2.  Plaintiffs' Fourth Amendment claims fail because the collection of
          license plate data does not constitute a search under the Fourth Amendment............. 18

II.  Plaintiffs' Motion for a Preliminary Injunction should be denied. ................................... 20

   A.  Plaintiffs have no likelihood of success on the merits. ........................................... 21

   B.  Plaintiffs cannot demonstrate irreparable harm. ................................................. 22

   C.  The balance of harms weighs decidedly against injunctive relief. ................................... 24

   D.  No injunction should be entered against Governor Pritzker or the Attorney General. ...... 25

Conclusion……………………………………………………………………………………26

# TABLE OF AUTHORITIES

## Cases

*Allee v. Medrano*, 416 U.S. 802 (1974) ............................................................. 23

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ..................................... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................. 3

*Association of Data Processing Orgs. v. Camp*, 397 U.S. 150 (1970) ........................................ 12

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) ........................................... 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................................... 3

*Boucher v. Sch. Bd. of Sch. Dist. Of Greenfield*, 134 F.3d 821 (7th Cir. 1998) ........................... 24

*Carney v. Adams*, 592 U.S. 53 (2020)................................................................ 7

*Carpenter v. United States*, 585 U.S. 296 (2018) ............................................... 16, 17

*Church of Our Lord & Savior Jesus Christ v. City of Markham*,
   913 F.3d 670 (7th Cir. 2019) ................................................................ 11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)...................................................... 23

*Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013)....................................................... 8

*Commonwealth v. McCarthy*, 484 Mass. 493 (2020)...................................................... 19

*Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. 2017) ................................................ 13

*Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009) ..................................................... 3

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) ............................................... 25

*Crosby v. Blagojevich*, No. 07-cv-6235, 2008 U.S. Dist. LEXIS, 98139
   (N.D. Ill. Dec. 4, 2008) ................................................................... 5

*David B. v. McDonald*, 156 F.3d 780 (7th Cir. 1998) ................................................... 5

*Del. State Sportmen's Ass'n. Inc. v. Del. Dept' of Safety & Homeland Sec.*,
   108 F.4th 194, (3rd Cir. 2024)..................................................... 22, 23, 25

*Doe v. Holcomb*, 883 F.3d 971 (7th Cir. 2018) ..................................................... 5, 6

*Ex parte Young*, 209 U.S. 123 (1908) ................................................................ 4

*Fairchild v. Hughes*, 258 U.S. 126 (1922) ........................................................... 9

*Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596 (E.D. Wis. 2020) ............................... 12

*Fenje v. Feld*, No. 01 C 9684, 2002 U.S. Dist. LEXIS 9492 (N.D. Ill. May 28, 2002)................ 22

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357 (7th Cir. 2019) .................................. 20

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) ............................................. 1

*Gerlach v. Rokita*, 95 F.4th 493 (7th Cir. 2024) ............................................................................ 4

*Green v. Mansour*, 474 U.S. 64 (1985) ........................................................................................... 4

*Heabler v. Madigan*, No. 12-cv-6193, 2013 U.S. Dist. LEXIS 136986 (Sep. 24, 2013) .............. 6

*Ill. League of Advocates for the Developmentally Disabled v. Quinn*,
    Case No. 13-cv-1300, 2013 U.S. Dist. LEXIS 145246 (N.D. Ill. Oct. 8, 2013) ........................ 5

*Illinois Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) ...................................... 20, 21

*Katz v. United States*, 389 U.S. 347 (1967) ................................................................................. 15

*Kentucky v. Graham*, 473 U.S. 159 (1985) .................................................................................... 4

*Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir. 1986) ............................................... 21

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021) ........ 16, 17

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ......................................................................... 9, 10

*Maryland v. King*, 567 U.S. 1301 (2012) ...................................................................................... 25

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) .............................................................................. 9

*Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642 (7th Cir. 2006) ............................................... 3

*Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658 (7th Cir. 2021) ......................................................... 9

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ............................................................................... 20

*Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765 (7th Cir. 2011) .............................................. 24

*Minnesota v. Carter*, 525 U.S. 83 (1998) .................................................................................... 14

*New York v. Class*, 475 U.S. 106 (1986) ...................................................................................... 18

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................................... 24

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020) ......................................................................... 21, 22

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1982) ................................................ 4

*Platinum Home Mort. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722 (7th Cir. 1998) .......... 24

*Ploss as Trustee for Harry Ploss Trust DTD 8/16/1993 v. Kraft Foods Group, Inc.*,
    431 F.Supp.3d 1003 (N.D. Ill. 2020) ...................................................................................... 13

*Preston v. Bd. of Trs. of Chi. State Univ.*, 120 F. Supp. 3d 801 (N.D. Ill. 2015) .......................... 22

*Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) .............................. 24

*Rizzo v. Goode*, 423 U.S. 362 (1976) ........................................................................................... 25

*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984) .................................... 21

*Ruiz v. Pritzker*, Case No. 22-cv-7171, 2024 U.S. Dist. LEXIS 53683
    (N.D. Ill. Mar. 26, 2024) ...................................................................................................... 5, 6

*Shell Oil Co. v. Noel*, 608 F.2d 208 (1st Cir. 1979)..........................................................5

*Smith v. Maryland*, 442 U.S. 735, (1979) .............................................................. 15, 17

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...................................................................7

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...............................................7

*Sweeney v. Raoul*, 990 F.3d 555 (7th Cir. 2021) .............................................................7

*United States v. Brown*, No. 19-cr-949, 2021 U.S. Dist. LEXIS 206153
    (N.D. Ill. Oct. 26, 2021) ................................................................................ 18, 19

*United States v. Jones*, 565 U.S. 400 (2012).......................................................... 15, 16

*United States v. Karo*, 468 U.S. 705 (1984) ................................................................ 16

*United States v. Knotts*, 460 U.S. 276 (1983) ................................................ 15, 16, 18

*United States v. Miranda-Sotolongo*, 827 F.3d 663 (7th Cir. 2016) ............................ 15

*United States v. Porter*, No. 21-cv-87, 2022 U.S. Dist. LEXIS 6755
    (N.D. Ill. Jan. 13, 2022)............................................................................................ 19

*United States v. Tuggle*, 4 F.4th 505 (7th Cir. 2021) .............................. 14, 15, 16

*Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247 (2011)................5

*Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). ...................................................3

*Warth v. Seldin*, 422 U.S. 490 (1975)........................................................................ 12

*Washington State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ................................................................... 10, 12, 14

*Whitmore v. Arkansas*, 495 U.S. 149 (1990)...................................................................8

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ....................................... 4, 5, 6

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)..................................................4

*Winter v. Nat. Res. Def. Counc.*, 555 U.S. 7 (2008)............................................... 20, 21

**Statutes**

605 ILCS 140/1.......................................................................................................... 1, 5
605 ILCS 140/5.............................................................................................................. 1

605 ILCS 140/5(c)(5)........................................................................................................6

605 Ill. Comp. Stat. Ann. 140/5 .......................................................................... 11, 25

**Rules**

F.R.C.P. 12(b)(1). ...........................................................................................................3

F.R.C.P. 12(h)(3). ...........................................................................................................3

## INTRODUCTION

In 2019, while travelling on an Illinois expressway, United States Postal Service worker Tamara Clayton was fatally shot.[1] In response to this shooting, the Tamara Clayton Expressway Camera Act ("the Act"), 605 ILCS 140/1 *et seq.* was enacted to help investigate expressway shootings. *Id.* Since 2020, the Illinois State Police ("ISP") has used Automated License Plate Readers ("ALPRs") to record the license plates of vehicles on expressways in Illinois, in accordance with the Act. Dkt. 1 ¶ 14. The Act was recently amended to allow for additional ALPRs throughout Illinois. *Id.* ¶ 22. These cameras—which exist solely on expressways or highways—are designed to increase highway safety and capture license plate images to allow law enforcement to investigate offenses such as aggravated vehicular hijacking, terrorism, motor vehicle theft, and forcible felonies. 605 ILCS 140/5. The ALPRs are intended, in part, to aid in criminal investigations and prosecutions of felonious crimes involving vehicles and to reduce violent crime (including gun crime on interstates). *See* n. 1, "Automated License Plate Reader – Transparency Page." The ALPRs are used for law enforcement purposes only and any information obtained by any ALPR will not be disseminated to the public, unless required by law. *Id.*

Plaintiffs challenge ISP's use of ALPRs, alleging they can create a "dragnet surveillance" of their every movement. Dkt. 1 ¶ 1. Plaintiffs claim that the ALPRs constitute an unconstitutional search in violation of the Fourth Amendment, and they bring claims against ISP Director Brendan Kelly, Governor Pritzker, and Attorney General Raoul, in their official capacities. *Id.* ¶¶ 8-10, and

---

[1] *See* Illinois State Police, "Automated License Plate Reader – Transparency Page" https://isp.illinois.gov/CriminalInvestigations/TransparencyPage (last accessed Sep. 10, 2024). The Court may take judicial notice of the information contained on this page as a matter that is beyond dispute and one that is referred to in the complaint (Dkt. 1 at 3, n. 1). *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012).

Count I. Plaintiffs have also filed a motion for preliminary injunction, that requests a court order barring ISP from accessing data obtained by the ALPRs without a warrant. Dkt. 15 at 13.

Plaintiffs' complaint should be dismissed and their motion for preliminary injunction denied. As an initial matter, Plaintiffs have not stated a viable Fourth Amendment[2] claim for three reasons. First, Plaintiffs' claims against Governor Pritzker and Attorney General Raoul are barred by the Eleventh Amendment. Second, Plaintiffs lack standing to bring their claims because they have never been investigated for any crime because of the ALPRs, and they do not allege that they have reason to believe that they ever will be investigated because of the ALPRs. *See generally id.* Third, the use of ALPRs falls squarely within constitutional boundaries because Plaintiffs do not have a reasonable expectation of privacy in a license plate number or a vehicle's movement on a public road and because ISP obtains the information with technology in public use while on public property. Case law confirms ALPRs are constitutional. In short, because Plaintiffs lack standing to bring their claims and because the ALPRs do not violate the Fourth Amendment, Plaintiffs' complaint should be dismissed.

And because Plaintiffs do not have a viable claim in the first instance, their motion for preliminary injunction also must be denied. Plaintiffs have not—and cannot—show a substantial likelihood of success on the merits of their Fourth Amendment claims. Plaintiffs also have not shown they will suffer irreparable harm if their motion for preliminary injunction is denied because they have not shown that the use of ALPRs violates their constitutional rights. Finally, the balance of interests weighs heavily against entering a preliminary injunction as a preliminary injunction would prevent the State from enforcing a statute designed to promote public safety. For all these

---

[2] As noted in Plaintiffs' complaint, the Fourteenth Amendment is the vehicle through which the Fourth Amendment applies to the states. Dkt. 1 ¶ 42. Because Plaintiffs do not bring a separate claim under the Fourteenth Amendment, this brief will address Plaintiffs' claims as brought under the Fourth Amendment.

reasons, as detailed below, the Court should dismiss Plaintiffs' complaint and deny Plaintiffs' motion for a preliminary injunction.

## **ARGUMENT**

Under Rule 12(b)(1), a party may move to dismiss a case based on "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). When a plaintiff lacks standing to bring an action, federal jurisdiction cannot attach and the court lacks subject matter jurisdiction. *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). Pursuant to Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. A complaint may be dismissed if the plaintiff fails to allege sufficient facts to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A sufficient complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and be supported by factual content because "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, the court may consider any exhibits attached to the complaint and, where the exhibit and complaint conflict, the exhibit typically controls. *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true, but it must also "draw on its judicial experience and common sense" to determine if the plaintiff has stated a plausible claim for relief. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), *quoting Iqbal* 556 U.S. at 678. If, upon its review, the court determines that a plaintiff has failed to meet this plausibility requirement, the matter should be dismissed.

I.      **Plaintiffs' Complaint should be dismissed.**

Plaintiffs' complaint should be dismissed because they have failed to state any viable claims. As an initial matter, Plaintiffs' claims against the Governor and the Attorney General are barred by the Eleventh Amendment. Further, Plaintiffs lack Article III standing to bring their claims. Finally, the use of ALPRs is constitutionally sound. Plaintiffs' claims should be dismissed in their entirety.

A.      **Plaintiffs' claims against the Illinois State Police, Governor Pritzker and Attorney General Raoul are barred by the Eleventh Amendment.**

To start, the claims against the ISP are clearly barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1982) (holding that the Eleventh Amendment bars claims against a state, regardless of the relief sought). This protection extends to state agencies. *Pennhurst*, 465 U.S. at 100. Moreover, as a state agency, the ISP is not a "person" for purposes of Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). As such, Plaintiff's claims against the ISP must be dismissed.

Turning to Plaintiffs' claims against the Governor and the Attorney General, "[g]enerally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). Plaintiffs here sue the Governor and Attorney General in their official capacities, rather than the State of Illinois, Dkt. 1 at caption, but this is a distinction without a difference. A suit against a state officer in his official capacity is, in every material respect, a suit against the state itself. *E.g., Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Gerlach v. Rokita*, 95 F.4th 493, 498-99 (7th Cir. 2024).

"The landmark case of *Ex parte Young*, 209 U.S. 123 (1908), created an exception to this general principle by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green v. Mansour*, 474 U.S. 64, 68 (1985). The

4

*Young* exception "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted). But the *Young* exception is "narrow" and requires a plaintiff to "direct" the Court to some "enforcement authority the [defendant] possesses in connection with [the challenged law] that a federal court might enjoin him from exercising." *Whole Woman's Health*, 595 U.S. at 39, 43. Put simply: "[t]o take advantage of *Young* the plaintiffs must sue the particular public official whose acts violate federal law." *David B. v. McDonald*, 156 F.3d 780, 783 (7th Cir. 1998). In other words, the plaintiff must name a "a party 'whose prospective action would violate federal law.'" *Ruiz v. Pritzker*, Case No. 22-cv-7171, 2024 U.S. Dist. LEXIS 53683, *5 (N.D. Ill. Mar. 26, 2024) (internal quotation and citations omitted).

Plaintiffs have not done so here. Their only allegation against Governor Pritzker is that he "is the Governor of the State of Illinois and is responsible for enacting and implementing the surveillance policy challenged in this case." Dkt. 1 ¶ 9. But the Act itself does not make any reference to the Governor or task him with any specific enforcement duty related to the Act. *See* 605 ILCS 140/1 *et seq.* "T]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Doe v. Holcomb*, 883 F.3d 971, 976 (7th Cir. 2018) (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979)); *see also Ill. League of Advocates for the Developmentally Disabled v. Quinn*, Case No. 13-cv-1300, 2013 U.S. Dist. LEXIS 145246, *14 (N.D. Ill. Oct. 8, 2013) ("A theory of liability predicated on a governor's general obligations as the executive of the State cannot avoid the consequences of the Eleventh Amendment."); *Crosby v. Blagojevich*, No. 07-cv-6235, 2008 U.S. Dist. LEXIS, 98139, *6 (N.D. Ill. Dec. 4, 2008) (holding claim based solely on

the governor signing a bill into law was barred by the Eleventh Amendment). In fact, "if governors could be sued based simply upon their executive role, the [*Ex parte Young*] exception would swallow the rule." *Ruiz*, 2024 U.S. Dist. LEXIS 53683 at *6. Because Governor Pritzker does not have any specific involvement in enforcing the Act, Plaintiffs' claims against him are barred by the Eleventh Amendment. *Id.* at *7.

Turning to Attorney General Raoul, Plaintiff alleges the Attorney General "is responsible for enforcing and defending the laws of the state of Illinois." Dkt. 1 ¶ 10. But the Act does not assign any specific role to the Attorney General beyond the potential prosecution of certain crimes after an ISP investigation. 605 ILCS 140/5(c)(5). As with Governor Pritzker, Plaintiffs' generic allegations regarding the Attorney General's duties do not suffice to state a claim against him. *Doe*, 833 F.3d at 976 (explaining that the duty to support the constitutionality of statutes does not overcome the Eleventh Amendment); *see also Ruiz*, 2024 U.S. Dist. LEXIS 53683 at *9-*10 (dismissing claim against attorney general who did not have a specific role in enforcing the challenged statute); *Heabler v. Madigan*, No. 12-cv-6193, 2013 U.S. Dist. LEXIS 136986, *11 (Sep. 24, 2013) (dismissing claim against attorney general and noting that the "general authority over Illinois law thus does not alone render [him] a proper defendant here"). Plaintiffs bear the burden that the *Young* exception to sovereign immunity applies. *See Whole Woman's Health*, 595 U.S. at 43 ("[plaintiffs] do not direct this Court to any enforcement authority the attorney general possesses in connection with [the challenged law] that a federal court might enjoin him from exercising"). Because Plaintiffs' have not met their burden here, their claims against Attorney General Raoul are also barred by the Eleventh Amendment and should be dismissed.

### B. Plaintiffs lack standing to challenge the use of ALPRs.

Separately, the Court lacks jurisdiction over Plaintiffs' claims because they have not established Article III standing. Article III "limits federal courts to resolving concrete disputes

between adverse parties." *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021). To establish standing, plaintiffs must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that a favorable decision will redress the injury. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To meet the Article III requirement, plaintiffs must satisfy the justiciability doctrines of both standing and ripeness. *See Sweeney*, 990 F. 3d at 559; *Spokeo*, 578 U.S. at 338. When a plaintiff cannot satisfy both, the court finds itself "with a request for an advisory opinion" even though "federal courts do not deal in advice." *Sweeney*, 990 F.3d at 561. That happens to be the situation we find ourselves in here.

### 1.  Plaintiffs' Complaint does not state an injury in fact.

To maintain their lawsuit, the Plaintiffs must establish all three elements of Article III standing by clearly alleging facts demonstrating that they have satisfied each element. *Spokeo*, 578 U.S. at 338. Instead, the Plaintiffs present what is tantamount to an academic debate about their disagreement with a state statute and its application to every person who drives on an Illinois expressway. Plaintiffs have failed to allege an injury in fact, which is the "first and foremost of standing's three elements." *Id.* (cleaned up).

To have an injury in fact, the Plaintiffs must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. at 339; *Carney v. Adams*, 592 U.S. 53, 58 (2020) (cleaned up). Notably, the injury must be *both* concrete and particularized. *Spokeo*, 578 U.S. at 340. A concrete injury is one that actually exists, while a particularized injury is one that affects the plaintiff "in a personal and individual way.". *Id.*; *accord Carney*, 592 U.S. at 58. An injury in fact cannot be abstract. *Spokeo*, 578 U.S. at 339-40. Additionally, the injury must be realized or imminent. An "imminent" injury is "certainly impending" and therefore "not too speculative for Article III

purposes." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (cleaned up). "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Plaintiffs here have not alleged suffering any concrete or particularized injury, let alone one that is imminent. Plaintiffs merely allege that ISP is "operating a system of dragnet surveillance," tracking anyone who drives in Cook County, "and holding onto those whereabouts just in case they decide in the future that some citizen might be an appropriate target of law enforcement." Dkt. 1 ¶¶ 1-2. Plaintiffs elaborate that they are "Cook County residents and drivers" and that they challenge "the warrantless, suspicionless, and entirely unreasonable tracking of their movements as an unreasonable search in violation of the Fourth and Fourteenth Amendments." *Id*. ¶ 4. That is, the Plaintiffs drive on roads that may have ALPRs, and that, alone, is their injury. The Plaintiffs do not get any more specific than that. They merely go on to state that, as a general matter, "ALPRs are used to run the plates of every citizen driving past against lists of 'hot' plates to track down those law enforcement has come to suspect," and that when "law enforcement chooses to investigate a citizen's past movements, the ALPRs feed databases creating a comprehensive map of their travels []." Dkt. 1 ¶¶18-19. Regardless of whether that simplified explanation of ALPRs is correct, it does not give Plaintiffs standing to pursue their claims before this Court. Plaintiffs' undefined hypothetical injuries that may (or may not) happen sometime in the infinite future, divorced from any concrete harm, are the antithesis of standing.

The Supreme Court has consistently held that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."

8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992); *see also Fairchild v. Hughes*, 258 U.S. 126, 129-30 (1922) ("Plaintiff has asserted only the right, possessed by every citizen, to require that the Government be administered according to law…. Obviously this general right does not entitle a private citizen to institute in the federal courts a suit."); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the power of judicial review must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally."). Plaintiffs have not established an injury-in-fact, failing to meet the first and foremost standing requirement.

Plaintiffs' claims are also not ripe. A "case is ripe when it is 'not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658, 664 (7th Cir. 2021) (cleaned up). Plaintiffs assert that ALPRs violate their constitutional rights because the ALPRs and law enforcement's potential use of ALPR data are unreasonable searches of Plaintiffs, violating the Fourth Amendment. This is insufficient because Plaintiffs do not allege that ALPR data has ever been used against them in any way, nor do they allege any reason to believe it will be. The Supreme Court has confirmed that broad allegations of theoretical harm, like what Plaintiffs allege here, are insufficient to establish standing. *See Lujan*, 504 U.S. at 573-74 ("Where there is no actual harm, however, its imminence (though not its precise extent) must be established.").

"A case is not ripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Mathis*, 12 F.4th at 664 (cleaned up). Furthermore, Plaintiffs' attempt to have this Court prematurely adjudicate a constitutional question requires heightened attention because this Court is being asked "to invalidate a State's law," which

risks that this Court will cause a "friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997). Speculation about the scope of a state law is "particularly gratuitous" in "the absence of prior state adjudication." *Id*. Similar concerns arise where plaintiffs bring facial, rather than as-applied, challenges. *Washington State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008).

Here, Plaintiffs do nothing more than raise a "generally available grievance about government" and seek relief that "no more directly and tangibly benefits [them] than it does the public at large." *Lujan*, 504 U.S. at 573-74. Moreover, Plaintiffs' lawsuit is ultimately about "an alleged violation of a right to have the Government act in accordance with law"—a claim that is not judicially cognizable because "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." *Id*. at 575-76 (cleaned up). Plaintiffs have done nothing more than raise the issue that, in their opinion, if they were to commit a specific subset of crime(s), law enforcement could use ALPRs -gathered data to link them to those crimes. Plaintiffs think this should only be possible after law enforcement gets a court-ordered warrant. However, that does not equate to the standing necessary to pursue their claims because "[s]tanding is not merely 'an ingenious academic exercise in the conceivable.'" *Id.* at 566. Plaintiffs must have an injury in fact that is ripe; they do not.

Even if ALPRs are storing Plaintiffs' license plate data, they are doing so for a limited time, and the ALPR data can only be used against the Plaintiffs if it links them to a particular subset of crimes. The statute clearly delineates what types of crimes may allow for searching the ALPR database and sets a 120-day limit on the amount of time *any* data may be saved:

> Images from the cameras may be extracted by any authorized user and used by any municipal police department, county sheriff's office, State Police officer, or other law enforcement agency with jurisdiction in the <u>investigation of any offenses involving vehicular hijacking, aggravated vehicular hijacking, terrorism, motor vehicle theft, or any forcible felony, including, but not limited to, offenses involving the use of a firearm</u>; to detect expressway hazards and highway conditions; and to facilitate highway safety and incident management. Images from the cameras shall not be used to enforce petty offenses or offenses not listed in this subsection, unless use of the images pertains to expressway or highway safety or hazards. Images from the cameras may be used by any law enforcement agency conducting an active law enforcement investigation. All images from the cameras shall be deleted within 120 days, unless the images are relevant to an ongoing investigation or pending criminal trial. Cameras shall not be used to monitor individuals or groups in a discriminatory manner contrary to applicable State or federal law.

605 Ill. Comp. Stat. Ann. 140/5 (emphasis added).

Plaintiffs base their case on the hypothetical that one day, law enforcement could start culling through ALPR data to investigate them for vehicular hijacking, terrorism, motor vehicle theft, or another forcible felony, including one that involves the unlawful use of a firearm. *See, e.g.*, Dkt. 1, 15. Plaintiffs articulate no injury, either particularized or concrete, that they have allegedly suffered because of the ALPRs or will suffer because of them; rather, they simply disagree with the existence of ALPRs and want this Court to grossly overstep its reach and overrule the Illinois legislature's decisions in enacting the Act.

Plaintiffs' concern that the State may misuse information about when they pass a particular portion of an expressway is "premised on uncertain or contingent events [that] present justiciability problems." *Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019). Indeed, the ripeness "doctrine's underlying objective is to avoid premature adjudication and judicial entanglement in abstract disagreements." *Id*. As the Supreme Court explained, facial challenges are "disfavored" because they "often rest on speculation" and thus "raise the risk of

premature interpretation of statutes on the basis of factually barebones records." *Washington State Grange*, 552 U.S. at 450. Facial challenges, therefore, may also "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* at 444 (cleaned up).

Plaintiffs state no actual or threatened "injury in fact, economic or otherwise," which they are suffering, or will suffer, if the ALPRs currently in existence remain so or if more are added. Furthermore, the Plaintiffs have not demonstrated "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Without such injury, there is no standing. *Association of Data Processing Orgs. v. Camp*, 397 U.S. 150, 152 (1970).

## 2. Plaintiffs lack standing to seek a preliminary injunction on behalf of all people in Illinois.

Finally, Plaintiffs' request for injunctive relief is improper to the extent that they seek an order making *all* ALPR data inaccessible to law enforcement until a warrant is obtained. *See* Dkt. 14. Plaintiffs lack standing to bring claims on behalf of third parties, which here appears to be every Illinois citizen. One of the prudential principles of standing is that a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The concept of standing dictates that "a plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596, 610 (E.D. Wis. 2020). Here, Plaintiffs' proposed remedy that ALPR data may only be accessed with a warrant is not relief tailored to an alleged injury that the Plaintiffs suffered or will imminently suffer. Indeed, no such injury exists

or is likely to exist in the future. Instead, Plaintiffs want all ALPR data to only be accessed after obtaining a warrant, which affects millions of Illinoisans whom Plaintiffs do not represent.

A request for relief as sweeping as that requested by the Plaintiffs would only be appropriate in a class action suit after class certification, once there has been a finding that the named plaintiffs "fairly and adequately protect the interests of the class." *Ploss as Trustee for Harry Ploss Trust DTD 8/16/1993 v. Kraft Foods Group, Inc.*, 431 F.Supp.3d 1003, 1011 (N.D. Ill. 2020). But to be an adequate representative, the named plaintiffs "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. (*citing Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017)). Here, the Plaintiffs have not shown that a single ALPR has recorded the license plate information from either of their vehicles on any road in Illinois, let alone that ISP has recorded that information and used it, or imminently will use it, in violation of the Plaintiffs' Fourth Amendment rights. Furthermore, Plaintiffs neither purport to bring this suit as a class action nor attempt to establish that their claimed situation represents a class with which they have the necessary commonality to represent that class's interests.

Because the Plaintiffs have neither articulated a concrete or particularized injury in fact, nor stated claims that are redressable by this Court, they lack standing to bring this lawsuit. Furthermore, Plaintiffs do not have the requisite standing to represent any third party. For these reasons, their complaint should be dismissed and their motion for preliminary injunction denied.

### C. Plaintiffs' claims under the Fourth Amendment fail because ISP's use of ALPRs does not constitute an unconstitutional search.

Even if Plaintiffs could establish standing, dismissal is still appropriate. As an initial matter, it is unclear if Plaintiffs have brought an as-applied challenge or a facial challenge to the Act. If Plaintiffs' Fourth Amendment claim is viewed as a facial challenge, it fails. "[A] plaintiff can only succeed in a facial challenge by establish[ing] that no set of circumstances exists under which the

Act would be valid, i.e., that the law is unconstitutional in all of its applications.". *Wash. State Grange*, 552 U.S. at 449. Plaintiffs cannot meet this burden. In fact, Plaintiffs motion for preliminary injunction references a potential constitutional use of ALPRs to locate a missing person. Dkt. 15 at 2. Therefore, to the extent that Plaintiffs have brought a facial challenge, it is not viable.

In any event, Plaintiffs' Fourth Amendment claims fail because the ALPRs do not constitute an unconstitutional search or seizure. "A search occurs either when the government physically intrudes without consent upon 'a constitutionally protected area in order to obtain information,' or 'when an expectation of privacy that society is prepared to consider reasonable is infringed.'" *United States v. Tuggle*, 4 F.4th 505, 512 (7th Cir. 2021) (internal quotations and citations omitted); *see also Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (defining "reasonable expectation of privacy" as an expectation "that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society"). Here, Plaintiffs cannot show that they have a reasonable expectation of privacy in their license plate numbers and, therefore, the collection of license plate data is not a search under the Fourth Amendment.

### 1. Plaintiffs do not have a reasonable expectation of privacy in their license plate numbers or travel on public thoroughfares.

For starters, because Plaintiffs do not allege any physical intrusions (*see generally* Dkt. 1 and 15), they must show the use of ALPRs infringes on an expectation of privacy that society is prepared to consider reasonable. *Tuggle*, 4 F.4th at 512. Technological advances have created many novel issues for courts to address, and this is certainly true in the Fourth Amendment context. "To grapple with the enhanced technological capacity of law enforcement investigations," the Supreme Court has applied a two-part test initially found in Justice Harlan's concurrence in *Katz*

*v. United States*, 389 U.S. 347 (1967). This test looks to (1) whether the person has "exhibited an actual (subjective) expectation of privacy" and (2) if that "expectation be one that society is prepared to recognize as 'reasonable.'" *Id.* at 361. Plaintiffs' Fourth Amendment challenge does not satisfy this test.

Even if Plaintiffs have shown they have a subjective expectation of privacy by filing this lawsuit, they cannot satisfy the second part of the *Katz* analysis because they cannot establish reasonable expectation of privacy in a license plate number. *See United States v. Miranda-Sotolongo*, 827 F.3d 663, 667-68 (7th Cir. 2016) (collecting cases for the holding that "[a] police officer's check of a vehicle registration in a database is not a Fourth Amendment search, as every other circuit that has considered this issue has held."). Also, individuals driving on a public road do not have a reasonable expectation of privacy. *See United States v. Knotts*, 460 U.S. 276, 281 (1983) (holding there is no expectation of privacy while driving on a public road). Applying these principles, court routinely have allowed government to use electronic surveillance to collect information that an individual "voluntarily turns over to third parties," *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) (superseded by statute) (upholding use of pen register system to track the phone numbers an individual dialed), so long as it does not physically intrude on "a constitutionally protected area in order to obtain [the] information." *United States v. Jones*, 565 U.S. 400, 407 (2012) (internal quotation omitted) (holding that physical trespass onto a vehicle to place a GPS device constituted a search).

This principle was recently applied by the Seventh Circuit in *Tuggle*, where the court held that the use of pole cameras that continually captured the outside of a defendant's home over 18 months did not constitute a search. *Tuggle*, 4 F.4th at 511. In reaching this decision, the Seventh Circuit noted that "the government's use of a technology in public use, while occupying a place it

15

was lawfully entitled to be, to observe plainly visible happenings [does] not run afoul of the Fourth Amendment." *Id.* This rationale has been applied to the government's collection of information about vehicles that are on public roads, so long as it was collected from property where the government had a right to be. *See Knotts*, 460 U.S. at 282 (holding that there was no Fourth Amendment violation when law enforcement used a tracking beeper to track a vehicle on public streets and highways when there was no trespass). Because an individual using a public road voluntarily displays information about their movements and vehicle to the public, "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Id.* at 281. Moreover, law enforcement's use of technology to enhance its ability to collect and retain large amounts of data does not violate the Fourth Amendment. "'Nothing in the Fourth Amendment prohibit[s] the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in' certain instances." *Tuggle*, 4 F.4th at 514 (quoting *Knotts*, 460 U.S. at 282).

This case is distinguishable from situations where the government intrudes into a protected area to obtain information. *See United States v. Karo*, 468 U.S. 705, 716 (1984) (distinguishing the search of the interior of a home from the information conveyed in *Knotts* which was voluntarily conveyed to the public); *see also Jones*, 565 U.S. at 407 (holding that physical trespass onto a vehicle to place a GPS device constituted a search). This case is also distinguishable from cases like *Carpenter v. United States*, 585 U.S. 296 (2018), and *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021), which Plaintiffs heavily rely on to support their motion for a preliminary injunction. *See* Dkt. 15 at 6-9.

In *Carpenter*, the Supreme Court held that the government's use of the defendant's historical cell phone site location information over a long period of time constituted a Fourth Amendment violation. *Carpenter*, 585 U.S. at 306. In reaching its decision, the Supreme Court recognized the general rule that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," *id.* at 307-08 (quoting *Smith*, 442 U.S. at 743-744), but also recognized the "unique nature of cell phone location records" which allow them to monitor the "whole of [one's] physical movements." *Id.* at 309, 313. The Court also recognized how historical cell phone records differ from vehicular tracking because "[w]hile individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Id.* at 311 (internal citations omitted). "Accordingly, when the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 311-12.

The Fourth Circuit applied similar reasoning in *Leaders of a Beautiful Struggle*, which examined the Baltimore Police Department's use of an integrated surveillance system consisting of planes with high-tech CitiWatch security cameras, Shot Spotter gunshot detection, and license plate readers. 2 F.4th at 334. There, the Fourth Circuit found that this multi-faceted surveillance system was analogous to *Carpenter* in that it was like "attaching an ankle monitor" to every person in the city. *Id.* at 341 (quoting *Carpenter*, 585 U.S. at 311-12).

The cases do not control the outcome here. The alleged facts show that the available information from ALPRs is easily distinguishable from the information at issue in *Carpenter* and *Leaders of a Beautiful Struggle*. Here, the ALPRs produce limited images of an individual's license plates on public highways and expressways. *See* Dkt. 1 ¶¶ 14, 23. Plaintiffs admit that "[t]he

technology is alleged to record only on public roads, from locations where the government is permitted to be—the "side of the road," from which the technology "record[s] the license plates of cars driving by, and then feed that information into a national database." *Id.* ¶ 16. This means that the ALPRs (unlike the information discussed in *Carpenter* and *Leaders of a Beautiful Struggle*) do not even show the non-highway/expressway roads that an individual drives on, let alone the homes, businesses, doctor's offices, or any other actual locations (with the potential exception of an expressway oasis), that a driver visits. Because the ALPRs only gather data that is voluntarily displayed when the Plaintiffs drive on public roads from a location that the ISP is allowed to occupy, Plaintiffs have no reasonable expectation of privacy in this information. *See Knotts*, 460 U.S. at 281.

      **2.    Plaintiffs' Fourth Amendment claims fail because the collection of license plate data does not constitute a search under the Fourth Amendment.**

Plaintiff's Fourth Amendment claims also fail because collecting license plate data is not a Fourth Amendment search because courts have routinely held that ALPR technology does not constitute a search. In fact, this district has already held that use of ALPRs does not constitute a search. In *United States v. Brown*, No. 19-cr-949, 2021 U.S. Dist. LEXIS 206153 (N.D. Ill. Oct. 26, 2021), Judge Shah denied defendant's motion to suppress evidence that was obtained without a warrant from license plate reader databases. The defendant in *Brown* argued he had a reasonable expectation of privacy in his movements and to be free from "near-constant" surveillance. *Id*. at *6. The court recognized that *Carpenter* protects certain privacies but rejected the defendant's argument, holding that the law enforcement agents "did not obtain the 'privacies' of [defendant's] life or exploit a too permeating police surveillance." *Id.* To support its holding, the court looked to *New York v. Class*, 475 U.S. 106, 113 (1986), which explained that "[e]very operator of a motor vehicle must expect that the State, in enforcing its regulations, will intrude to some extent upon

that operator's privacy." The Supreme Court in *Class* also confirmed "it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile. […] The exterior of the car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'" 475 U.S. at 114. The court in *Brown* therefore concluded that the use of license plate reader databases did not constitute a Fourth Amendment search. 2021 U.S. Dist. LEXIS 206153 at *9.

Judge Coleman applied this rationale a year later in *United States v. Porter*, No. 21-cv-87, 2022 U.S. Dist. LEXIS 6755 (N.D. Ill. Jan. 13, 2022). As in *Brown*, the defendant in *Porter* moved to suppress evidence where his license plate was captured by a Chicago automatic license plate reader and then, without a warrant, used to query the National Vehicle Location Services (an ALPR database) for images of the defendant's vehicle over eight weeks. *Id*. at *2-3. The court denied defendant's motion to suppress this evidence, citing *Knotts* for the proposition that an individual does not have a reasonable expectation of privacy for information displayed to the public "especially when travelling in automobiles." *Id*. at *7. The court distinguished *Carpenter* and held that "the [ALPR] database query response did not reveal intimate details of [the defendant's] daily life, nor did it track his every movement. Rather the query produced limited images of [the defendant's] vehicle at public locations over a period of approximately eight weeks, which reveals little about the intimate details of his life." *Id*. at *7-8. The court therefor held that "[l]aw enforcement's use of the automated license plate reader database did not infringe upon [defendant's] reasonable expectation of privacy." *Id*.

Plaintiffs admit, as they must, that other courts have held that ALPR data does not constitute a Fourth Amendment violation. *See* Dkt. 15 at 11 (collecting cases). Plaintiff cites *Commonwealth v. McCarthy*, 484 Mass. 493 (2020) to imply that the Massachusetts Supreme

Court found that ALPRs typically violate the Fourth Amendment. Dkt. 15 at 10-11. This is not so, the Massachusetts Supreme Court upheld the use of ALPRs in that situation and noted that "[t]his limited surveillance does not allow the Commonwealth to monitor the whole of the defendant's public movements, or even his progress on a single journey." *Id.* at 508-09. In light of the clear precedent holding that Plaintiffs do not have a reasonable expectation of privacy in their movements on public thoroughfares, and accordingly upholding the use of ALPRs, Plaintiffs cannot state a viable Fourth Amendment claim.

## II. Plaintiffs' Motion for a Preliminary Injunction should be denied.

Because Plaintiffs have not stated a viable Fourth Amendment claim for the reasons discussed above, they also are not entitled to a preliminary injunction. In addition to the reasons discussed above, Plaintiffs cannot carry their burden to justify a preliminary injunction. Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted). Accordingly, "applicant[s] for preliminary relief bear[] a significant burden": they must make a "strong showing" that they are likely to succeed on the merits as well as showing that "irreparable injury is likely in the absence of an injunction," "the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (*quoting Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).

If the plaintiffs satisfy all these requirements, the court must then weigh the harm that the plaintiffs will incur without an injunction against the harm to the defendant if one is entered, and "consider whether an injunction is in the public interest." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotations omitted). This analysis is done on a "sliding scale"— if the plaintiffs are less likely to win on the merits, then the balance of harms must weigh

more heavily in their favor, and vice versa. The court should pay "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. A preliminary injunction is "never awarded as of right" and "never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020). As discussed, Plaintiffs are unlikely to succeed on the merits of their claims. Further, they cannot show that they are likely to suffer any harm, let alone irreparable harm, if their motion for preliminary injunction is denied; therefore, the balance of harms weighs against injunctive relief. Because Plaintiffs cannot meet the high bar set for issuing a preliminary injunction, their motion for a preliminary injunction should be denied.

### A.   Plaintiffs have no likelihood of success on the merits.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits." *Winter*, 555 U.S. at 20. A plaintiff must make a "strong" showing that he will succeed on the merits, meaning that he must demonstrate how he proposes to prove the key elements of the case. *Illinois Republican Party*, 973 F.3d at 762. Even if a plaintiff makes the required showing, the court must determine how likely it is that the plaintiff will actually succeed: "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). When there are "two equally credible versions of the facts the court should be highly cautious in granting an injunction without the benefit of a full trial." *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440 (7th Cir. 1986) (citation omitted). As explained above in support of Defendants' motion to dismiss, Plaintiffs fail to establish a likelihood of success on the merits of their Fourth Amendment claim. Because Plaintiffs have little chance of success on the merits, the balance of harms must weigh very heavily in their favor. However, as discussed below, the balance of harms weighs strongly *against* granting a preliminary injunction.

**B.      Plaintiffs cannot demonstrate irreparable harm.**

Plaintiffs have failed to establish that they will suffer irreparable harm if the Court denies their motion. Plaintiffs assert that any infringement on their constitutional rights automatically constitutes irreparable harm. Dkt. 15 at 12. But Plaintiffs have failed to show that their Fourth Amendment rights have been violated at all, and it is well established that the *possibility* of irreparable harm is not sufficient to warrant a preliminary injunction. *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020).  And as the Third Circuit has recently explained, a presumption of irreparable harm "is the exception, not the rule." *Del. State Sportsmen's Ass'n. Inc. v. Del. Dept' of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3rd Cir. 2024). Moreover, this presumption generally only applies in First Amendment cases. *Id*. at 204.

Even if Plaintiffs could establish some possible harm, "the threat of irreparable harm does not automatically trigger a preliminary injunction." *Id.* at 201. The purpose of a preliminary injunction is not to prevent any interim harm, but to prevent irreparable harm that "threatens to moot a case, as when one party's conduct could destroy the property under dispute, kill the other party, or drive it into bankruptcy, 'for otherwise a favorable final judgment might well be useless.'" *Id*. Where the "plaintiff's alleged injury does not threaten to moot the case" the "wiser course" is "often, perhaps usually," the denial of a preliminary injunction. *Id*.

Indeed, Plaintiffs' lengthy delay in moving for a preliminary injunction "undercuts [their] claims of irreparable harm" and "may be considered as circumstantial evidence that the potential harm to [Plaintiffs] is not irreparable or as great as claimed." *Fenje v. Feld*, No. 01 C 9684, 2002 U.S. Dist. LEXIS 9492, at *6 (N.D. Ill. May 28, 2002*); see also Preston v. Bd. of Trs. of Chi. State Univ.*, 120 F. Supp. 3d 801, 806 (N.D. Ill. 2015) (delay in First Amendment case "undermines the severity of these purported harms"); *Del. State Sportsmen's Ass'n. Inc.*, 108 F.4th at 206 ("Delay in

22

seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action.") (quotations omitted).

ALPRs have been used in Illinois since 2020, and the most recent amendment that expands the number of ALPRs that will be installed throughout Illinois went into effect in December 2022. Plaintiffs waited until May 30, 2024, to file this lawsuit and until August 20, 2024, to move for a preliminary injunction. *See* Dkts. 1, 14. Nothing prevented Plaintiffs from filing this lawsuit and moving for a preliminary injunction years ago. Given that Plaintiffs did not feel it was necessary to promptly challenge the Act to prevent the alleged irreparable harm, it would be "inconsistent with the [Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" to grant Plaintiffs' request. *Winter*, 555 U.S. at 22. Plaintiffs have failed to demonstrate irreparable harm.

Plaintiffs also argue they will suffer irreparable harm if their motion for preliminary injunction is denied because they do not have an adequate remedy at law. Dkt. 15 at 12. To support this argument, Plaintiffs point to a First Amendment decision addressing an Illinois eavesdropping law for the proposition that their damages are difficult to quantify and therefore damages are not an adequate remedy. *Id.* This argument is not persuasive here because even if information obtained by ALPRs were used against Plaintiffs (which is pure speculation, *see supra* Section I(B)), and Plaintiffs incur the injuries they hypothesize in their complaint, there are adequate legal remedies available to them. Injunctive relief requires that Plaintiffs lack adequate legal remedies and are in danger of experiencing substantial and immediate injury if their requested relief is not granted. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Allee v. Medrano*, 416 U.S. 802, 814 (1974). That is not the case here.

Here, an injunction is unnecessary because under the hypothetical scenarios that Plaintiffs present (*e.g.*, ALPR data is used to investigate them for one of the crimes listed in the Expressway Camera Act), they have an adequate remedy at law. If ALRP data is ever used against Plaintiffs in a criminal court, they can file a motion to suppress the ALPR data (*see e.g.* Dkt. 15 at <u>Exhibit A</u>, a state-court order from Virginia where a criminal defendant challenged the use of ALPR data as evidence against him). Here, Plaintiffs have not suffered any harm from the use of ALPRs because, as discussed, they have never had ALPR data used against them and it is pure speculation that there ever will be APLR data used against them in a future criminal case. As such, Plaintiffs' argument that they have no remedy at law is not compelling, especially when balanced against the other preliminary injunction factors.

### C. The balance of harms weighs decidedly against injunctive relief.

Under the "balance of harms" portion of the analysis, Plaintiffs must establish that "the harm they would suffer without the injunction is greater than the harm that preliminary relief would inflict on the defendants." *Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765, 769 (7th Cir. 2011). As Plaintiffs' claims are unlikely to succeed on the merits, Plaintiff "must compensate for the lesser likelihood of prevailing by showing the balance of harms tips *decidedly* in favor of the movant." *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 826 n. 5 (7th Cir. 1998) (emphasis in original). The Court also should consider whether a preliminary injunction would cause harm to the public interest. *Platinum Home Mort. Corp. v. Platinum Fin. Group, Inc*., 149 F.3d 722, 726 (7th Cir. 1998). When the government is the opposing party, the final two factors in the preliminary injunction analysis—the balance of the equities and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) ("The government's interest *is* the public interest.") (emphasis in original).

It is undeniable that the State has an exceptionally strong interest in promoting public safety, especially given the violent crimes that the ALPRs may be used to investigate. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991); 605 Ill. Comp. Stat. Ann. 140/5. Moreover, the State has a strong interest in enforcing its own democratically enacted laws. *Del. State Sportmen's Ass'n. Inc.*, 108 F.4th at 206. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quotations omitted). "Without the clarity of a full trial on the merits," the Court should "err on the side of respecting state sovereignty." *Del. State Sportmen's Ass'n. Inc.*, 108 F.4th at 206. Even after a trial, a federal court should issue injunctions against the State only "sparingly." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976). This strong preference against such intrusive injunctive relief is primarily founded on "delicate issues of federal state relationships" (*id*. at 380 (quotation omitted)), which are premised on "the principles of equity, comity, and federalism." *Id*. at 379 (quotation omitted). The State's interests in public safety and in enforcing its own laws far outweighs Plaintiffs' purported injuries, which are vague and speculative. The preliminary injunction should be denied for this reason as well.

**D.  No injunction should be entered against Governor Pritzker or the Attorney General.**

Finally, even if the Court were to enter a preliminary injunction in this matter, it should not be entered against Governor Pritzker or the Attorney General. As discussed above, neither Governor Pritzker nor Attorney General Raoul are a proper defendant for a challenge to the Act. For the same reason, an injunction against Governor Pritzker and the Attorney General is neither necessary nor appropriate in this case.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' complaint and deny their motion for a preliminary injunction.

September 10, 2024                         Respectfully submitted,

                                          <u>/s/ Mary A. Johnston</u>

                                          Mary A. Johnston
                                          Elizabeth J. Andonova Mallory
                                          Assistant Attorneys General
                                          Office of the Illinois Attorney General
                                          Government Representation Division
                                          General Law Bureau
                                          115 South LaSalle
                                          Chicago, Illinois 60603
                                          (312) 814-4417/(312) 814-4355
                                          Mary.johnston@ilag.gov
                                          E.AndonovaMallory@ilag.gov

                                          *Counsel for Defendants*

26