**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE SCHOLL and FRANK BEDNARZ, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 24-cv-4435 |
| | ) | Honorable Martha M. Pacold |
| ILLINOIS STATE POLICE; BRENDAN F. KELLY, in his official capacity as Director of the Illinois State Police; JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois; KWAME RAOUL, in his official capacity as Attorney General of Illinois, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs challenge the Tamara Clayton Expressway Camera Act ("the Act"), 605 ILCS 140/1 *et seq*., alleging that the use of Automated License Plate Readers ("ALPRs") to record license plates of vehicles on Illinois expressways violates their Fourth Amendment rights. But Plaintiffs' claims rely on a faulty understanding of the Fourth Amendment—they do not have a reasonable expectation of privacy in the license plate number that they freely share with the world every time they pull onto an expressway. With no reasonable expectation of privacy, Plaintiffs' claims stall at the starting line.

As an initial matter, Plaintiffs' claims against the Illinois State Police ("ISP"), Governor Pritzker, and the Attorney General are barred by the Eleventh Amendment. Plaintiff tries to argue around this well-established principle, but if the Governor can be liable for overseeing any state agency responsible for enforcing a statute, the Eleventh Amendment would be meaningless.

1

Plaintiffs are also incorrect in their assertion that Attorney General Raoul is responsible for enforcing the Act.

Plaintiffs lack standing to bring their claims because they have never had data from an ALPR used against them in a legal proceeding and do not allege that ALPR information will be used against them in the future. In response, Plaintiffs assert that despite never having ALPR data used against them, they are injured by the mere collection of data by ALPRs. Plaintiffs do not cite any case law to support this position, and their conclusory argument that collecting their publicly displayed license plate numbers while they are driving on public roads constitutes an injury is unpersuasive, particularly because the use of ALPR data in general is constitutional.

But even if they have standing, Plaintiffs' Fourth Amendment claims fail because they do not have a reasonable expectation of privacy in their license plate numbers and movements on a public expressway and the relevant case law has established that ALPRs are constitutional. Plaintiffs try to save their claims by arguing that ALPR data is like cellphone data or other devices that allow tracking, but this comparison fails. Courts in this district have already rejected the aggregate data theory that Plaintiffs rely on, holding that ALPRs do not violate the Fourth Amendment. Because Plaintiff cannot state any viable claim against any Defendant, Defendants' motion to dismiss should be granted.

## ARGUMENT

### I. Plaintiffs' claims against the Illinois State Police, Governor Pritzker, and Attorney General Raoul are barred by the Eleventh Amendment.

In their opening brief, Defendants explained that any claims against ISP are barred by the Eleventh Amendment. *See* Dkt. 23 ("MTD") at 4. In their response, Plaintiffs concede that their claims against ISP are barred. The Court should dismiss all claims against ISP.

Defendants also established that Plaintiffs' claims against Governor Pritzker are barred by

the Eleventh Amendment because he has no specific role in enforcing the Act. MTD at 6. In response, Plaintiffs argue that "Kelly and ISP work for the Governor, who ha[s] ultimate authority over their actions." ECF No. 28 ("Resp.") at 2. Governor Pritzker is a proper defendant, Plaintiffs argue, because he is "the official[] responsible for overseeing and managing the implementation of the challenged policies of the Act." *Id*. "But governors 'do not automatically satisfy the some connection standard' simply by virtue of their position within the executive branch." *Ruiz v. Pritzker*, No. 22-cv-07171, 2024 U.S. Dist. LEXIS 53683, at *6 (N.D. Ill. Mar. 26, 2024). Indeed, as the Supreme Court explained in *Ex Parte Young*, if governors could be sued based simply upon their executive role, the exception would swallow the rule. 209 U.S. 123, 157 (1908). "Simply overseeing" a state agency that "actually enforces and implements the Act [] remains insufficient under *Ex Parte Young*." *Ruiz*, 2024 U.S. Dist. LEXIS 53683, at *8. As one court explained,

> The complaint alleges that Governor Pritzker has 'oversight responsibility' over all of the state agencies. . . . That is true, but it's not enough. . . . [Plaintiff] seeks prospective injunctive relief against the Governor simply because he is the top official in the executive branch in state government. Under *Ex parte Young*, that's a non-starter.

*Eason v. Pritzker*, No. 18-cv-2553, 2020 U.S. Dist. LEXIS 215779, at *23 (N.D. Ill. Nov. 18, 2020).

Attempting to avoid the Governor's dismissal, Plaintiffs rely on dicta in *Doe v. Holcomb*, where the Seventh Circuit speculated that "Doe *may* have been able to overcome the Eleventh Amendment had he sued the Governor to enjoin the enforcement of the BMV's requirements." Resp. at 3 (quoting *Doe v. Holcomb* 883 F.3d 971, 975 (7th Cir. 2018) (emphasis added). Plaintiffs assert that this "hypothetical" saves their claim against Governor Pritzker (Resp. at 3), but Plaintiffs misunderstand the *Ex Parte Young* doctrine. "To fall within *Ex parte Young*, and thus obtain prospective injunctive relief against a governor, a plaintiff must allege specific involvement by the governor in the unconstitutional policy or practice." *Eason*, 2020 U.S. Dist. LEXIS 215779,

at *21-22. Here, Plaintiffs assert only that the Governor has "final authority over the policies and practices of ISP" because "he appoints the director, who reports to him." Resp. at 3. But "[u]nder *Ex Parte Young*, that's a non-starter." *Eason*, 2020 U.S. Dist. LEXIS 215779, at *23. The Governor should be dismissed as a defendant.

Finally, Defendants explained that the Attorney General is not a proper defendant because the Act does not assign him any role beyond the potential prosecution of certain crimes after an ISP investigation. MTD at 6 (citing 605 ILCS 140/5(c)(5)). In response, Plaintiffs first argue that "Kelly and ISP work for the Governor and Attorney General, who have ultimate authority over their actions." Resp. at 3. But the Attorney General has no authority over either the ISP or Director Kelly. *See* Ill. Const. Art. V. § 9(a) ("The Governor. . . shall appoint all officers whose election or appointment is not otherwise provided for."); Ill. Const. Art. V. § 15; 15 ILCS 2015/4 (describing the duties of the Attorney General). And mere oversight is not enough anyway.

Plaintiffs then assert that "the Attorney General of Illinois is the chief law enforcement officer of the state responsible for overseeing the criminal investigations and prosecutions derived from this unconstitutional surveillance." Resp. at 3. But while the Attorney General is the chief law enforcement officer, that role alone does not make him a proper defendant. *See Doe*, 883 F.3d at 976. The Attorney General may prosecute certain felonies committed on the expressway pursuant to 605 ILCS 140/5(c)(5), but his ability to *use* evidence gathered by ALPRs does not mean that he is either enforcing or implementing the Act. If the Act were enjoined, ISP would not be able to provide ALPR evidence to the Attorney General, but the Attorney General would still be able to prosecute crimes. Because the Attorney General has no "direct role to play in . . . the challenged program" (Resp. at 4), he too should be dismissed as a defendant.

4

## II. The collection of data from ALPRs is not a cognizable injury.

Plaintiffs bear the burden to establish Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing these elements [of standing]."). Plaintiffs have failed to meet this burden. As explained in Defendants' opening brief, the first requirement to establish Article III standing is an injury, and Plaintiff cannot show that they have suffered any injury because of the ALPRs. MTD at 7-12. In response, Plaintiffs argue that ISP's collection and retention of ALPR data, even if it is never used against Plaintiffs, is a sufficient injury to create standing. PL Resp. at 4-7. But Plaintiffs must identify an injury that is "legally and judicially cognizable," which "requires, among other things, that the plaintiff have suffered 'an invasion of a legally protected interest.'" *Aurora Loan Servs. v. Craddieth*, 442 F.3d 1018, 1024 (7th Cir. 2006) (*quoting Raines v. Byrd*, 521 U.S. 811, 819 (1997)). Here, Plaintiffs' argument goes beyond what courts have recognized as a legally cognizable injury and does not cite to any comparable cases to support their position that the collection and retention of data from ALPRs creates a legally cognizable injury. Because Plaintiffs have not, and cannot, meet their burden, Plaintiffs claims should be dismissed for a lack of standing.

As Defendants' opening brief explained, an injury in fact requires "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016); MTD at 7. This means that the alleged injury must actually exist, and it must affect the plaintiff in a personal and individual way. *Id.* This requirement "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objective to a particular government action." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). This type of moral or ideological disagreement, which is insufficient to establish an Article III injury, is all that exists here. *See id.*

Here, Plaintiffs admit that ALPRs have never been used against them and that there is no

reason to believe that ALPRs will be used against them. Resp. at 4-5. That leaves Plaintiffs to make the only argument available to them that hinges on the theory that the collection of their license plate data is, in itself, an injury. *Id.* at 4-7. Plaintiffs also say they can bring this challenge on behalf of the people of the State of Illinois, despite not having moved for, let alone received, class certification. Resp. at 6. But even in a class action, the named plaintiffs must still demonstrate that they "possess the same interest and suffer the same injury as the class members." *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017). And while Plaintiffs are correct that there is no "outright ban" on injunctions being applied to non-parties, "[s]uch injunctions present real dangers, and will be appropriate only in rare circumstances." *City of Chi. v. Barr*, 961 F.3d 882, 918, 916 (7th Cir. 2020). Those "rare circumstances" are not present here, where not even the Plaintiffs face any legally cognizable injury. Blocking an entire system from functioning would be a significant overreach and prevent the ALPRs from being used for purposes that Plaintiffs concede are constitutional. *See* Resp. at 7 and Section III below.

Plaintiffs have failed to show that the collection of ALPR data constitutes a search. Their inability to cite any relevant cases holding that the mere use of ALPRs to collect and temporarily retain information constitutes an injury demonstrates the overall weakness of their claims. Because standing is a legal notion without precise definitions, "the standing concepts have gained considerable definition from developing case law." *All. for Hippocratic Med.*, 602 U.S. at 384 (cleaned up). But Plaintiffs have failed to provide any case law to support their theory that collecting license plate data creates an Article III injury. *See* Resp. at 4-7. And as Defendants discuss in Section III, Plaintiffs' attempts to distinguish *United States v. Brown*, No. 19-cv-949, 2021 U.S. Dist. LEXIS 206153, **7-9 (N.D. Ill. Oct. 26, 2021) and *United States v. Porter*, No. 21-cv-87, 2022 U.S. Dist. LEXIS 6755, *8 (N.D. Ill. Jan. 13, 2022), are unpersuasive and ignore

these courts' clear holdings that the collection of ALPRs doe not violate the Fourth Amendment.

Instead of citing relevant case law to support their theory that the retention of ALPR data that has never been used against them constitutes an injury, Plaintiffs discuss other Fourth Amendment principles about when the government may be able to use information that was obtained in an unconstitutional search. Resp. at 5. But this discussion is irrelevant because, as discussed in Defendants' opening brief and this reply, the use of ALPRs does not violate the Fourth Amendment in the first instance. Plaintiffs' argument that the retention of ALPR data causes an injury is grounded in the notion that the use of ALPRs violates the Fourth Amendment. While standing is typically evaluated separately from the merits, the inquiries often merge in Fourth Amendment cases. This is because "[t]he concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Terrence Byrd v. United States*, 574 U.S. 395, 410-11 (2018) (holding that Fourth Amendment standing need not be resolved before the merits, while jurisdictional standing must be). But the use of ALPRs does not violate Plaintiffs' rights and Plaintiffs have failed to show that the collection of data by ALPRs is, in itself, an injury.

Plaintiffs also make an ill-conceived argument that they must have standing because if Illinois were to pass a law requiring surveillance cameras in master bedrooms, any plaintiff could challenge this intrusion without waiting for that information to be used. Resp. at 5. But unlike here, that kind of law would intrude on an individual's privacy protected by the Fourth Amendment, which protects the "right of the people to be secure in their persons, *houses*, papers, and effects." U.S. Const. Amend. IV (emphasis added). Plaintiffs' analogy merely highlights the weaknesses of their argument; there is an undeniable difference between what happens in your bedroom and what

public highways you travel. Plaintiffs position is based on a fundamental misunderstanding of the controlling law. Because Plaintiffs have not shown that they have standing to bring their claims, Plaintiffs' claims must be dismissed.

### III. Plaintiffs' claims under the Fourth Amendment fail because ISP's use of ALPRs is not an unconstitutional search.

Apart from Plaintiffs' lack of standing to bring their claims, their claims fail because the use of ALPRs does not violate the Fourth Amendment. Turning first to Plaintiffs' facial challenge, Plaintiffs misunderstand the significant burden they must satisfy to succeed on a facial challenge. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (explaining that a facial challenge can only succeed if an act is unconstitutional in all applications). As the Supreme Court recently reiterated, a facial challenge requires the plaintiff to "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 144 S. Ct. 1889, 1892 (2024) (quoting *United States* v. *Salerno*, 481 U. S. 739, 745 (1987)). Plaintiffs admit that any use of ALPRs in real time could have constitutional uses but argue that there is no reason that the temporarily-stored ALPR data could be used without violating an individual's rights. Resp. at 7-8. Their own example, however—the real-time use of ALPR data to search for a missing person—undermines this argument. If such data can be used in real time, there is no reason the same data cannot be used to search for the missing person in the hours, days, or weeks after an individual goes missing without violating anyone's rights. Because there are constitutional uses of stored ALPR data, Plaintiffs' facial challenge necessarily fails.

Plaintiffs' as-applied challenge also fails. Plaintiffs' claims only relate to the use of the ALPR system as established in the Tamara Clayton Expressway Act (*see generally* Dkt. 1), which applies only to expressways and certain state highways. 605 ILCS 140/5. In response, Plaintiffs speculate that ISP may have access to data from other camera systems "which might include many

cameras in and around Cook County." Resp. at 9. But Plaintiffs cannot rely on a fishing expedition to salvage their insufficient pleadings. Plaintiffs' complaint challenges only the use of specific cameras on Illinois highways. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (explaining that a motion to dismiss only considers the allegations in the complaint).

Moreover, Plaintiffs' argument is based in a misunderstanding of Fourth Amendment jurisprudence generally, which looks to whether the government has infringed on an expectation of privacy that society considers reasonable. *United States v. Tuggle*, 4 F.4th 505, 512 (7th Cir. 2021). Defendants' opening brief explained that Plaintiffs do not have a reasonable expectation of privacy in their license plates or their movement on public thoroughfares. MTD at 14-18. Plaintiffs try to distinguish the Defendants' cases, but they miss the point that it is not reasonable to expect that your publicly displayed activity on public roads is private.

Plaintiffs attempt to distinguish *United States v. Knotts*, 460 U.S. 276 (1983) and *United States v. Jones*, 565 U.S. 400 (2012), by arguing that "[i]f *Knotts* controlled here, then *Jones*— which held that physical trespass onto a vehicle to place a GPS device constituted a search, 565 U.S. at 405–06—would have come out differently." Resp. at 8. But as the Supreme Court discussed in *Jones*, "the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test. The holding in *Knotts* addressed only the former, since the latter was not at issue." *United States v. Jones*, 565 U.S. 400, 409 (2012) (emphasis in original). The *Jones* court made it clear that "[s]ituations involving merely the transmission of electronic signals without trespass would *remain* subject to *Katz* analysis." *Id*. at 411 (emphasis in original). Similarly, here there is no trespass into Plaintiffs' vehicles and the reasonable expectation of privacy test controls.

Plaintiffs also attempt to distinguish *United States v. Miranda-Sotolongo*, 827 F.3d 663, 667-68 (7th Cir. 2016), which held that a police officer's check of a vehicle registration is not a Fourth Amendment search. Plaintiffs assert that this case in inapposite because the officer believed there was reason to verify the vehicle's registration. Resp. at 8. But the holding of *Miranda-Sotolongo* was not based on whether there was a reason to run a specific license plate, but on the principle that it is not reasonable to expect that your publicly displayed information is private. Simply put, "[b]ecause they are in plain view, no privacy interest exists in license plates." *Miranda-Sotolongo*, 827 F.3d at 668 (quoting *United States v. Walraven*, 892 F.2d 972, 974 (10th Cir. 1989). The court specifically held that a police officer can rely on non-private information that could be seen by any member of the public, "[r]egardless of whether there was an articulable suspicion" that the driver was engaged in unlawful conduct. *Miranda-Sotolongo*, 827 F.3d at 668.

Plaintiffs argue that "Defendants appear to be invoking the third-party doctrine of *Smith v. Maryland*, 442 U.S. 735 (1979)," and that "*Smith* and other third-party doctrine cases are irrelevant here" because the ALPR data is collected by the government, as opposed to a third-party. Resp. at 10. But Plaintiffs have once again missed the point—they have, in fact, voluntarily shared their license plate numbers with thousands of third parties every time they drive. The real question is whether a person has a reasonable expectation of privacy in information that they publicly display and their public movements. As explained in Defendants' opening brief, they do not. MTD at 14-18.

Defendants' opening brief also explained why the aggregate data theory from *Carpenter v. United States*, 585 U.S. 296 (2018), and *Leaders of the Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021), does not save Plaintiffs' claims. MTD at 16-18. In response, Plaintiffs unsuccessfully try to equate ALPRs with the type of aggregate information mining

discussed in *Carpenter*. Resp. at 9-10. To draw a link between these cases, Plaintiffs continue to make generic claims about "dragnet" surveillance, claiming that ISP has "access to data from any other jurisdiction that uses the Vigilant database." *Id.* at 9-11. But again, Plaintiffs' allegations are limited to the ALPR cameras administered by ISP, which are only located on certain highways throughout the state. As a result, the amount and type of information that can be gleaned from the ALPRs simply does not create a comprehensive picture of a person's travel and activities.

Plaintiffs' attempts to distinguish the ALPRs from the pole cameras in *Tuggle* also fails. Resp. at 8-9. Plaintiffs argue that the ALPRs are more intrusive because there are more of them throughout the State. *Id.* But the cameras in *Tuggle* were focused on an individual's residence, 24 hours a day, showing every person who entered and exited. 4 F.4th at 510, 524 ("In one sense, the recordings painted a whole picture of the happenings outside Tuggle's front door by recording nonstop for eighteen months."). Such nonstop surveillance provided significantly more information about a person's life than snapshots of what highways an individual used. The Seventh Circuit has recently affirmed *Tuggle* and the use of pole cameras outside of an individual's residence. *See United States v. House*, No. 23-1950, 2024 U.S. App. LEXIS 28045, *21-22 (7th Cir. Nov. 5, 2024). *House* recognized that there can be Fourth Amendment concerns when the government uses retrospective data to recreate an individual's movements. *Id.* at *15-18. However, as discussed, the use of ALPRs does not provide anywhere near the level of detail about an individual's movements as the historic cell phone data at issue in *Carpenter*.

Finally, Plaintiffs attempt to distinguish *Brown*, 2021 U.S. Dist. LEXIS 206153, and *Porter*, 2022 U.S. Dist. LEXIS 6755, which held that the use of ALPR data does not violate the Fourth Amendment. PL Resp. at 10-11. These attempts fail because Plaintiffs ignore the clear holdings of these cases. Both *Brown* and *Porter* specifically considered and rejected the aggregate

11

data theory from *Carpenter*. The *Brown* court explained that the ALPR data did not "reveal the whole of [defendant's] movements . . ." and did not expose details about where defendant "traveled, what businesses he frequented, with whom he interacted in public, or whose homes he visited, among many other intimate details of his life." *Brown*, 2021 U.S. Dist. LEXIS 206153 at *9; *see also Porter*, 2022 U.S. Dist. LEXIS 6755 at *8 (explaining that while the aggregation of publicly displayed information *may* violate the Fourth Amendment, the use of ALPRs did not) (emphasis added). Other courts have reached the same conclusion. *See United States v. Martin*, Case No. 23-cr-150, 2024 U.S. Dist. LEXIS 186377*, *50 (E.D. Va. Oct. 11, 2024) (holding that use of ALPR data did not violate Fourth Amendment); *Commonwealth v. Robinson*, Case Nos. CR 24000221 & CR 24000402, 2024 Va. Cir. LEXIS 104, *20-21 (June 26, 2024) (same); *United States v. Salcido-Gonzalez*, Case No. 23-cr-49, 2024 U.S. Dist. LEXIS 91349, **29-30 (D. Utah May 21, 2024) ("holding use of ALPR was not a search and that ALPRs are "unlike GPS Tracking or cell phone tower data information because the [A]LPR system at issue did not operate at the granular level of detail that would expose the intimate details of an individual's life"). It is impossible to equate knowing what highways someone drove on, or even drives on regularly, with the ability to create a comprehensive record of an individual's movements. As such, the use of ALPRs do not violate the Fourth Amendment.

<u>**CONCLUSION**</u>

For these reasons and those addressed in the Motion to Dismiss, Defendants respectfully request that this Court dismiss Plaintiffs' complaint.

November 22, 2024

Respectfully submitted,

*/s/ Mary A. Johnston*

Mary A. Johnston
Elizabeth J. Andonova Mallory
Assistant Attorneys General
Office of the Illinois Attorney General
Government Representation Division
General Law Bureau
115 South LaSalle
Chicago, Illinois 60603
(312) 814-4417/(312) 814-4355
Mary.johnston@ilag.gov
E.AndonovaMallory@ilag.gov

*Counsel for Defendants*